This action was in ejectment to recover land in Dutchess county, near Fishkill Landing.
The plaintiff, in order to establish its cause of action, offered in evidence a certified copy of a record of letters patent from the People of the state of New York to the New York Central and Hudson River Railroad Company, dated December 26, 1873, being a record in the office of the secretary of state. The defendant's counsel objected to the paper offered as incompetent and immaterial upon various grounds stated, among which are the grounds that there is no provision of *Page 472 
law authorizing the recording of letters patent in the office of the secretary of state, and there is no provision of law for offering in evidence anything other than the original patent, nor any provision of law for reading in evidence the original record of any such letters patent, or any certified copy of such record. The objections were overruled and the certified copy of the record of letters patent was admitted in evidence, to which the defendant took an exception.
The only question which we feel called upon to discuss in this case is that pertaining to the competency of the certified copy of the record of the patent in the office of the secretary of state. It is contended that the paper in question is not evidence, for the reason that there is no law authorizing a record of patents in the office of the secretary of state. The question raised is one of considerable importance, in view of the fact that if the appellant is correct, many titles to real estate may be seriously affected. We have, therefore, made a careful examination of the statutes for the purpose of determining the question.
The office of secretary was established in 1625, and has been continued under various names until the present time. Under the government of the province of New Netherlands he was known as secretary of the province. Under the English colonial government he was known as the secretary of the colony. And under the state government he is called secretary of state. The office was made the depository of such books as contained records of patents, grants and conveyances, together with deeds, parchments, maps and papers (1 R.S. 166, § 1.) Upon the transfer of the government from the Dutch to the English, the records, files and documents of the office were passed over to the custody of the secretary of the colony, and upon the termination of that government they passed into the custody and control of the secretary of state, and now form a part of the records, files and public documents in that office.
When the government was transferred from the Dutch to the English in 1664, it was provided in the articles of capitulation that "the Dutch here shall enjoy their own customs *Page 473 
concerning their inheritances and all public writings and records which concern the inheritances of any people or the reglement of the church, or poor, or orphans, shall be carefully kept by those in whose hands now they are and such writings as particularly concern the States General, may at any time be sent to them." (Appendix No. 1, 2 R.L. 1813.)
Under our first Constitution the office of secretary was not specifically mentioned, but it was continued and was not abolished. It provided that "all officers other than those who, by this constitution are directed to be otherwise appointed, shall be appointed in the manner following." It then proceeds to specify the manner in which appointments shall be made, and then provided that such parts of the common law of England and of the statute law of England and Great Britain and of the acts of the legislature of the colony of New York as formed the law of the colony on the 19th day of April, 1775, were continued the law of the state, subject to such alterations as the legislature shall, from time to time, make, and all grants of lands within the state made by the king of Great Britain, or persons acting under his authority prior to the 14th day of October, 1775, were continued in force. (Const. 1777, §§ 23, 35, 37.) Under the Constitution of 1821, the secretary of state was made a constitutional officer, appointed by the senate and assembly, and under the Constitution of 1846 the office was made elective by the people.
By chapter 12 of the Laws of 1784 the office of the secretary of state was located in the city of New York, in a house owned by the state, on the west side of Broadway, where the archives and records of this state were required to be deposited.
By chapter 48 of the Laws of 1791 a fireproof building was authorized to be erected in the city of Albany for the purpose of the preservation and safe keeping of the records of this state and for the transacting the business of the office of the said secretary, and by chapter 31 of the Laws of 1797 it was provided that as soon as the building is completed and fit for the reception of the records, books, papers and other things *Page 474 
attached to, or in any wise relating or belonging to the offices aforesaid, the said secretary be required to remove and deposit the same in such building accordingly, and the said office from and after the removal aforesaid shall be kept in the building aforesaid.
We have called attention to the foregoing laws for the purpose of showing that the secretary of state is the successor of the secretary of the colony, and that the acts to which we shall subsequently refer authorized the recording of patents in the secretary's office.
Section 933 of the Code of Civil Procedure provides that "a copy of a paper filed, kept, entered, or recorded, pursuant to law, in a public office of the state, the officer having charge of which has, pursuant to law, an official seal; * * * or a transcript from a record, kept, pursuant to law, in such a public office, or by such a clerk or secretary, is evidence, as if the original was produced."
Upon referring to the Colonial Laws (Vol. 1, p. 31), we find that the Duke of York's laws, promulgated by Governor Nicolls under date of March 1st, 1664, provide that every clerk of every court of sessions shall enter all grants, bargains, sales and mortgages of houses, lands, rents and hereditaments, together with the estates of the grantor and grantee, things and estates granted, together with the date thereof. Upon page 62 it is provided that "all records of bargains and sales, or any other conveyances, administrations or probates of wills within the north and west riding, shall be transmitted to the office at New York, with the fees ordained for the records, within one month after the record shall be made in the courts; if in the east riding, within two months." Upon page 77 it is further provided that "all lands, patents and bounds, and limits of towns are to be recorded in the office of records at New York, as well as in each particular town, and at the sessions."
By chapter 15 of the Laws of 1683, provision was made for the recording of grants, deeds, mortgages and other conveyances in the register of the county where the lands are situated, *Page 475 
and also that "the said deeds, mortgages or other conveyances as aforesaid bee by the clerk or register of the county where such deeds, mortgages or other conveyances are entered, transmitted once every yeare to the secretary's office att New Yorke, with the ffees ordained for the same there to be registered and entered."
On the 30th day of October, 1710, another act was passed providing that "every deed or deeds, conveyance or conveyances and writings relating to the title or property of any lands, messuages, tenements or hereditaments within this colony which have been already or shall be hereafter executed, being duly acknowledged and recorded in the secretary's office of the said colony, or in the county records where such lands are situate and being, such deed or writing so recorded, or transcript thereof, shall be good and effectual evidence in any court of record within this colony, to all intents and purposes, as if the original deed or deeds, conveyance or conveyances and writings was or were produced and proved in court." (1 Col. Laws, ch. 216, pp. 712, 713.)
As we have seen, the Constitution of the state continued in force as the law of the state the law of the colony enacted prior to the 19th day of April, 1775. The effect of this provision was to continue the colonial laws referred to, in full force and effect under the state government. They not only authorized the recording of deeds and conveyances, but all papers relating to the title of lands, and then make such records, or the transcript thereof, good and effectual evidence in any court. But this is not all. For some reason, perhaps, for greater safety and clearness, the legislature saw fit to re-enact the law of 1710, and this was done by chapter 44 of the Laws of 1788, substituting the secretary of state for that of secretary of the colony. The provision is as follows: "That all and every deed and deeds, conveyance and conveyances and writings whatsoever relating to the title or property of any messuages, lands, tenements or hereditaments within this state heretofore executed, or hereafter to be executed, being duly acknowledged by the party or parties executing the same, or *Page 476 
duly proved by one or more of the subscribing witnesses to the execution thereof and recorded in the office of the secretary of this state, or in the office of the clerk of the county in which such lands are situated, shall and may be read in evidence in any court of this state without further or other proof of the execution thereof, and the record thereof, or a transscript of the same shall and may be given and received in evidence."
Again, by chapter 238 of the Laws of 1811, it was further provided "that every conveyance, or writing relating to the title or property of any lands or real estate within this state being duly acknowledged * * * shall and may be recorded in the office of the secretary of this state, or of the clerk of the county in which such lands or real estate are situated." To the same effect is chapter 97 of the Revised Laws of 1813.
By chapter 96 of the Laws of 1805 it was further enacted that "the deputy secretary of this state shall hereafter be clerk of the commissioners of the land office and that it shall be the duty of the said clerk to enter the minutes of their proceedings as heretofore and to keep the same in the secretary's office in proper order, with the papers and documents which may be presented to the said board." This act made further provision for the payment by the patentee or patentees of all patents thereafter issued of lands lying under water of the sum of five dollars to the secretary of state for each grant, and also authorized the secretary of state to cause a translation of the records of his office written in the Dutch language to be made in English and transcribed in proper books for that purpose, which translations were to be retained in his office as a part of the public records of the state. The provisions of this act with reference to the duty of the deputy secretary of state are continued in the Revised Laws of 1813, chapter 74, and in the Public Lands Law of 1894, chapter 317, § 2.
By chapter 295 of the Laws of 1839 the legislature made provision for the preservation of title papers and so on of the *Page 477 
Holland Land Company, and by section five provided generally with reference to every county in the state, that "a copy of any deed or conveyance or other instrument in writing relating to, or in any manner affecting the title to any real estate which is or may be recorded or filed in the office of the secretary of state, upon being certified by said secretary in the manner required by law to entitle the same to be read in evidence, may be recorded in the office of the clerk of any county in this state or in the office of the register of deeds in the city of New York, with the secretary's certificate; and such record and a duly certified copy thereof may be read in evidence in the same manner and with the like effect as the record of a conveyance of real estate situate in such county originally recorded in the said clerk's office or in the office of said register."
By chapter 110 of the Laws of 1845 it was provided that "All letters patent issued under the great seal of this state, granting land to any person or persons, in addition to the record thereof made in the office of the secretary of state, may be recorded in the county where the lands granted are situated, in the same manner and with the like effect as any deed regularly acknowledged or proved before an officer authorized by law to take the proof and acknowledgment of deeds, whenever the patentee or owner of such lands shall request the same to be so recorded."
Under the Revised Statutes all copies of records and papers in the office of the secretary of state, certified by him and authenticated by the seal of his office, shall, in all cases, be evidence equally in like manner as the original. (1 R.S. 166, § 4.)
Such, in substance, were the provisions of the statutes relating to the question under consideration at the time of the trial of this case. Since then, by chapter 517 of the Laws of 1896, the legislature has again provided that "All letters patent shall be recorded in a book or books to be kept for that purpose in the office of the secretary of state, and the record thereof in any such book or a copy of any letters patent duly certified by *Page 478 
the secretary of state to be a copy of such record thereof, whether, heretofore or hereafter recorded, shall be received in evidence in any court in this state with the same force and effect as the original of such letters patent."
We think we are not called upon to consider the effect of the latter statute upon the question, for, to our minds, the statutes to which we have referred furnish ample authority in law for the recording of patents in the office of the secretary of state; that being so, the provisions of the Code referred to, make a certified copy of such a paper evidence which the court is bound to receive.
The other questions involved in the case were properly disposed of by the Appellate Division.
The judgment should be affirmed, with costs.
All concur.
Judgment affirmed.